IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



UNITED STATES OF AMERICA

v.                                              Criminal No. 3:07CR407

ANTOINE HILL

## MEMORANDUM OPINION

Antoine Hill, a federal inmate proceeding pro se, submitted this motion and a supporting memorandum under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  Thereafter, Hill submitted a Motion to Amend and a Supplemental Memorandum of Law.  Scattered throughout those submissions, Hill raises the following grounds for relief:

| | |
|---|---|
| Claim 1 | Trial counsel failed to challenge the search warrant for Hill's residence on the ground that the police submitted false testimony in the affidavit in support of that warrant. |
| Claim 2 | Trial and appellate counsel failed to cite the applicable case law, which would have demonstrated that Hill's statements were inadmissible under Miranda.[1] |
| Claim 3 | Trial counsel failed to request a competency hearing. |
| Claim 4 | Trial counsel failed to conduct an adequate investigation and present records reflecting: (a) that Hill was mentally incompetent; (b) that Hill had a serious accident and "could not ha[v]e sold drugs during the time period in question" (Supp'l Mem. Supp. § 2255 Mot. (Docket No. 58) 6); |

_____

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

and (c) that Hill was not the only occupant of the apartment in which the drugs were found.

Claim 5    Counsel failed to object to the Court's failure to comply with 21 U.S.C. § 851(b).[2]

Claim 6    After trial, a conflict of interest arose between Hill and trial counsel.

Claim 7    Appellate counsel provided ineffective assistance.

Claim 8    Counsel failed to object that "[t]he prosecutor knowing[ly] introduced the USA Search Warrant knowing it not to be a[n] accurate copy of the Affidavit submitted to the Commonwealth of Virginia Court." (Supp'l Mem. Supp. § 2255 Mot. 9.)

Claim 9    Counsel failed to object that Detective Killingsworth testified falsely about Hill's ownership of the gun and heroin found in Hill's apartment.

The Government has responded. Hill has replied. The matter is ripe for disposition.

_____

[2] That provision states:

If the United States attorney files an information under this section, the court shall after conviction but before pronouncement of sentence inquire of the person with respect to whom the information was filed whether he affirms or denies that he has been previously convicted as alleged in the information, and shall inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence.

21 U.S.C. § 851(b).

# I.   FACTUAL AND PROCEDURAL HISTORY

A grand jury charged Hill in a three-count indictment with: possession with the intent to distribute heroin (Count One); possession of a firearm in furtherance of a drug trafficking crime (Count Two); and possession of a firearm by a convicted felon (Count Three).   Hill retained Reuben Greene to represent him on these charges.

On May 30, 2008, Greene moved to suppress the statements Hill made to police prior to the search of his residence on the grounds that such statements had been obtained in violation of Hill's rights under Miranda.   On June 23, 2008, Greene filed an addendum to his Motion to Suppress wherein he sought to suppress the evidence obtained from a search of Hill's residence on the ground that the affidavit supporting the search warrant cited an unreliable confidential source.   On June 24, 2008, the Court conducted a hearing on the Motion to Suppress and denied the Motion.

On July 2, 2008, a jury found Hill guilty of the three counts charged in the Indictment.   The Court set the matter for sentencing on October 7, 2008.   On October 6, 2008, Greene moved to withdraw as counsel.   On October 7, 2008, the Court denied the Motion to Withdraw and sentenced Hill to 300 months of imprisonment.   On October 8, 2008, Greene filed a notice of

3

appeal and a Second Motion to Withdraw as Counsel.   On October 9, 2008, the Court granted the Second Motion to Withdraw as Counsel.

On appeal, Timothy V. Anderson represented Hill (hereinafter "appellate counsel").   On appeal, appellate counsel asserted, inter alia, that "the district court erred when it denied [Hill's] suppression motion by allegedly misapplying the public safety exception to pre-Miranda custodial statements and then incorrectly admitted his post-Miranda statements."   United States v. Hill, 340 F. App'x 950, 951 (4th Cir. 2009) (internal footnote omitted).   The United States Court of Appeals for the Fourth Circuit denied Hill's appeal.   Id. at 953.

## II.   ALLEGED INEFFECTIVE ASSISTANCE

To demonstrate ineffective assistance of counsel, a defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense.   Strickland v. Washington, 466 U.S. 668, 687 (1984).   To satisfy the deficient performance prong of Strickland, the defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'"   Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting

4

Strickland, 466 U.S. at 689).   The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome."   Strickland, 466 U.S. at 694.   In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice.   Id. at 697.

### A.   The Motion To Suppress

Hill has filed a number of claims alleging deficient performance by counsel in litigating the Motion to Suppress.

### 1.   Allegedly False Testimony In The Affidavit For The Search Warrant

First, in Claim 1, Hill faults counsel for not challenging allegedly false testimony by Detective Killingsworth in the affidavit used to obtain the search warrant of 515 West Franklin Street,[3] Apartment #316.   (Mem. Supp. § 2255 Mot. (Docket No. 55) 7-11.)   Specifically, Hill alleges, "Detective Killingsworth[']s statements that he and a confidential source conducted a controlled purchase [of heroin] from Petitioner on January 13,

---

[3] This is the address for Park Plaza at Belvidere Luxury Apartment Homes or Park Plaza at Belvidere Apartments.   (Mem. Supp. § 2255 Mot. Ex. G 6.)   Because Hill's exhibits are not usefully paginated, the Court will utilize the page numbers assigned to these exhibits by the Court's CM/ECF system.

2007, were deliberately false.   Petitioner had verifiable proof that on that date he was performing community service." (Id. at 10.)

The pertinent portion of the affidavit in support of the search warrant reads:

> On or about January 13, 2007, a confidential source (CS) under the direction of law enforcement officers placed a recorded telephone call to Hill at cellular telephone number (804) 305-0006 to arrange a purchase of a quantity of heroin.  Hill answered the telephone and agreed to meet the CS at a pre-arranged meet location to conduct the heroin transaction.  Law enforcement officers observed Hill arrive at the pre-arranged meet location and meet with the CS to conduct the heroin transaction.   Following the transaction Hill was followed to Park Plaza at Belvidere Apartments and was observed entering a code into the security gate prior to entry into the parking deck. Hill parked the vehicle in assigned parking spot #21. Alltel Communication records list Antoine Hill as the customer receiving service for telephone number (804) 305-0006.

(Id. Ex. G 6.)   To support his claim that Detective Killingsworth lied about Hill conducting a sale of heroin on January 13, 2007, Hill directs the Court to a document he claims demonstrates Hill's work on community service on that date. (Id. Ex. B 2.)   Exhibit B appears to be a computer printout summary of Hill's institutional history.   (Id.) The computer printout does not contain any information which coherently reflects that Hill performed community service on January 13, 2007.   Although the following cursive writing appears on the

bottom on the document, "The hours for community service is 730 am-230 pm.," no date accompanies that writing. (Id.)

In order to obtain a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), a defendant must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." Id. at 155-56. The computer printout submitted by Hill does not constitute reliable proof that Hill performed community service on January 13, 2007, much less that Detective Killingsworth lied about conducting a controlled purchase of heroin from Hill on the date. Even if Hill did perform community service on January 13, 2007 from 7:30 a.m. until 2:30 p.m., he still had ample opportunity to conduct the sale of heroin as alleged in the affidavit. Accordingly, Claim 1 will be dismissed because Hill cannot demonstrate any reasonable probability of success on a suppression motion had counsel pressed the arguments Hill urges here.

### 2.   Alleged Prosecutorial Misconduct With Respect To Filing Copies Of The Search Warrant And Supporting Documents

In Claim 9, Hill alleges that, had counsel conducted an adequate investigation, counsel would have learned that the Search Warrant, supporting affidavit, and Search Warrant Return

filed in federal court by the United States in opposition to Hill's Motion to Suppress were not the same documents that previously had been filed in state court. (Supp'l Mem. Supp. § 2255 Mot. 2.) The Government explains that two search warrant returns were filed in state court.[4] (Gov't's Resp. Opp'n Pet'r's Supp'l Mem. (Docket No. 66) 2.) The Government further acknowledges that the copy of the Search Warrant, supporting affidavit, and Search Warrant Return which it appended to its Reply to Hill's Motion to Suppress apparently failed to include a page of the affidavit used to obtain the Search Warrant. Although Hill makes much of this omission, Hill fails to demonstrate any reasonable probability that Greene could have obtained a different result on the Motion to Suppress had Greene pursued a more thorough investigation into the documents used to obtain a search of Hill's residence. Accordingly, Claim 9 will be dismissed because Hill has not demonstrated prejudice.

### 3. Admission Of The Statements Allegedly In Violation Of _Miranda_

In Claims 2 and 7, Hill faults the quality of trial and appellate counsel's attempt to suppress, as violating _Miranda_, statements he made to the police. The record reflects that on August 10, 2007, Richmond city police detectives, working in the

---

[4] The difference between the two returns was the addition of a digital scale to the later filed return. (Gov't's Resp. Opp'n Pet'r's Supp'l Mem. 2.)

Special Investigation Division (SID), a narcotics unit within the Richmond Police Department, received information that the defendant was a drug dealer and had drugs and a gun in his residence at 515 West Franklin Street, Apartment #316 in Richmond. Hill and Andre Williams leased Apartment #316 at 515 West Franklin Street. Detective Killingsworth obtained a search warrant for this apartment, leased by Hill and Andre Williams.

The police set up surveillance where they could observe the entrance to the apartment building and Hill's vehicle, but they could not directly view the entrance to Hill's individual apartment. (Trial Tr. 35.) Detective Bevington observed Hill leave the apartment building and drive away in his car. The police made a traffic stop of the vehicle and placed Hill in handcuffs. Detective Bevington told Hill about the search warrant. Detective Bevington asked Hill if anyone were in the apartment. Hill replied no. Detective Bevington asked Hill if there were a gun in the apartment. Hill told Detective Bevington that he would find a gun next to Hill's bed on the night stand. Detective Bevington asked whether the police would find drugs in the apartment. Hill responded that the police would find heroin on a plate in the living room. Detective Bevington took Hill's key to the apartment and went to assist in the search of the apartment.

Upon execution of the search warrant, police recovered nearly 2 ounces of heroin, a digital scale, packaging materials, $6,900 in United States currency, a firearm, cell phones, and documents bearing Hill's name.  Inside the apartment, police observed two bedrooms.  One bedroom contained a bed, clothes, and furniture, while the other bedroom contained only men's clothing.

After the execution of the search warrant, Detective Killingsworth read Miranda warnings to Hill, and Hill acknowledged that he understood his rights.  In response to Detective Killingsworth's questioning, Hill admitted ownership of the gun found in the apartment and provided substantial information about his drug trafficking activities.

Trial and appellate counsel argued that Hill's pre-Miranda statements regarding the weapon and drugs in the apartment should be suppressed.  This Court and the United States Court of Appeals for the Fourth Circuit rejected this argument.  The Fourth Circuit concluded Hill's pre-Miranda statement pertaining to a weapon located in his residence was admissible under the public safety exception to Miranda.  United States v. Hill, 340 F. App'x 950, 951-52 (4th Cir. 2009) (citing New York v. Quarles, 467 U.S. 649 (1984)).  The Fourth Circuit further found that Hill was not entitled to any relief with respect to pre-

10

_Miranda_ inquiry into the location of any drugs in Hill's residence. _Id._ at 952. "Because the district court correctly admitted Hill's post-_Miranda_ statements—which were essentially identical to his pre-_Miranda_ statements—we conclude that the jury 'would not have found the [Government's] case significantly less persuasive' if the pre-_Miranda_ statements had been excluded." _Id._ (internal footnote omitted; alteration in original) (citing _Schneble v. Florida_, 405 U.S. 427, 432 (1972). "[B]ecause the jury would have received the same evidence even if Hill's pre-_Miranda_ statements were suppressed by the district court, any error by the district court to admit Hill's pre-_Miranda_ statement was harmless beyond a reasonable doubt." _Id._

Hill contends that, had trial and appellate counsel cited better authority, he would have prevailed on his Motion to Suppress. The authority offered by Hill, however, fails to support this contention.[5] Accordingly, Claims 2 and 7 will be

---

[5] For example, Hill argues that _United States v. Mobley_, 40 F.3d 688 (4th Cir. 1994), reflects that the public safety exception does not apply to his pre-_Miranda_ statement about the gun. _Mobley_ is distinguishable from the present case. In _Mobley_, the police, while executing both a valid search warrant of Mobley's residence, and an arrest warrant for Mobley himself, encountered the defendant naked and therefore clearly unarmed. _Id._ at 690. The Fourth Circuit concluded that no danger to the officer existed because, by the time the officers asked Mobley whether there were any guns in the house, they already had led him away from the house and conducted a security sweep of the residence and determined that Mobley had been alone. _Id._ at 693. Hill's circumstances clearly differ from Mobley's. For

dismissed because Hill fails to demonstrate deficiency or prejudice.

## B.   Alleged Inadequate Investigation

In Claim 3, Hill faults counsel for not moving for a competency hearing.   During the course of the trial, Hill's mother testified that Hill was "slow" and had learning disabilities as a child.   (Trial Tr. 95.)   Hill's mother testified these problems became worse after Hill had a car accident as an adult.   Hill contends that counsel "should have known, that Ms. Hill could not provide the credible testimony needed regarding these issues.   Thus, under the totality of the circumstances, any reasonable attorney would have sought a competency hearing."   (Supp'l Mem. Supp. § 2255 5 (citation omitted).)   However, "[n]ot every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges.   Similarly, neither low intelligence [nor] mental deficiency . . . can be equated with mental incompetence to stand trial."   Beck v. Angelone, 261 F.3d 377, 388 (4th Cir. 2001) (internal citations and quotation marks omitted).   Although Hill's intellectual capacity is below

---

example, unlike Mobley, the police did not know whether the residence they intended to search was vacant at the time posed they questioned Hill.

average, he fails to direct the Court to evidence demonstrating that, at the time of his trial, he lacked the ability to assist counsel or understand the charges against him. Indeed, Hill's testimony at trial reflects that he understood the charges against him and had a present ability to assist counsel in defending against those charges. (Trial Tr. 104-18.) Accordingly, Claim 3 will be dismissed because Hill has not demonstrated deficiency or prejudice.

Similarly, in Claim 4(a), Hill faults counsel for not conducting an adequate investigation and providing the jury with expert testimony about "Hill's state of mind during the course of the alleged criminal conduct." (Supp'l Mem. Supp. § 2255 6.) Additionally, Hill faults counsel for not obtaining a copy of Hill's high school record, which would reflect "Hill's mental competence during his school years." (Id.) "However, an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced." Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) (citing Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990)). Here, Hill fails to couple his claims regarding an inadequate investigation into his mental health with any specific, credible proffer as to how his school records or an expert's testimony would have swayed a jury to doubt

13

Hill's guilt.  See Mallett v. United States, 334 F.3d 491, 498 (6th Cir. 2003).  Accordingly, Claim 4(a) will be dismissed.

Prior to addressing Hill's remaining claims of an inadequate investigation, it is appropriate to summarize the overwhelming evidence of his guilt.  As recounted above, on August 10, 2007, the police searched Hill's apartment.  Prior to the search, Hill told Detective Bevington, "he [(Hill)] did have a firearm inside the apartment . . . . on the nightstand next to his bed."  (Trial Tr. 37.)  Hill "further stated he had heroin sitting on a plate . . . by the living room couch."  (Id.)  Upon entering the apartment, Detective Bevington found the heroin and firearm in the locations described by Hill.  The police also recovered a digital scale, cellophane wrapping, aluminum foil, and plastic baggies consistent with packaging heroin for street-level distribution.  (Id. at 43.) Additionally, the police seized approximately $7,000.

The apartment consisted of two bedrooms, a small kitchen, and a living room.  (Id. at 38-39.)  Only one bedroom had a bed and furniture.  The furnished bedroom contained the gun that Hill acknowledged owning.  The unfurnished bedroom contained only clothes.

After the search, Hill admitted to Detective Killingsworth that he had owned the gun for a couple of years and he kept it

14

for his protection.   Hill stated that he purchased the heroin in the apartment from an individual called Truck.   (Id. at 64.) Hill explained that he dealt heroin to pay his bills and provided a description of his drug trafficking for the past four years.   Hill further admitted that he had stopped selling drugs "for a brief period of time" when he received a $170,000.00 settlement from an accident.   (Id. at 67.)   Hill, however, acknowledged that as of August 2007, he had resumed dealing heroin.

Given the foregoing evidence, no reasonable probability exists that a jury would have acquitted Hill had counsel presented records reflecting that Hill was in a serious accident and therefore "could not ha[v]e sold drugs during the time period in question."[6]   (Supp'l Mem. Supp. § 2255 6). Accordingly, Claim 4(b) will be dismissed.

In Claim 4(c), Hill faults counsel for not introducing the lease of the apartment in order to show that Hill "was not the only occupant authorized to reside in the residence."   (Supp'l Mem. Supp. § 2255 Mot. 6.)   Counsel, however, introduced testimony from Detective Bevington reflecting that Andre Williams' name appeared on the apartment lease along with Hill.

---

[6] Count One of the Indictment charged Hill with possession with intent to distribute heroin on August 10, 2007, the date the police recovered the heroin from his apartment.

15

(Trial Tr. 52-53.)  Given that testimony, counsel did not need to introduce the lease itself.  Because Hill fails to demonstrate deficiency or prejudice, Claim 4(c) will be dismissed.

### C.    Alleged False Testimony

In Claim 9, Hill faults counsel for not objecting to Detective Killingsworth's testimony.  Specifically, Hill complains, "The prosecutor knew that it was Hill's defense that the contraband discovered belonged to his roommate, and to rebut this testimony, the prosecutor caused Killingsworth to lie about this material fact."  (Supp'l Mem. Supp. § 2255 Mot. 9 (spelling corrected).)  Hill suggests Killingsworth testified falsely that only Hill lived at the apartment in question and directs the Court to Killingsworth's testimony during the Government's rebuttal.  (Id. Ex. 4.)  During Killingsworth's rebuttal testimony, Killingsworth never testified that Hill lived alone at the apartment.  (Id. at 119-20.)  Rather, Killingsworth indicated that during his questioning of Hill, Hill never talked "about another person living in the apartment."  (Trial Tr. 119.)  Hill fails to demonstrate Killingsworth testified falsely or the prosecution engaged in any misconduct.  Because Hill has not demonstrated deficiency or prejudice, Claim 9 will be dismissed.

16

### D.   Post-trial Issues

#### 1.   Lack Of Colloquy Required By 21 U.S.C. § 851(b)

Although the United States filed a notice of its intention to seek an enhanced sentence under 21 U.S.C. § 851, the Court failed to comply with its obligation under 21 U.S.C. § 851(b). This provision required the Court to ask Hill either to affirm or deny the prior conviction listed by the United States as a basis for an enhanced sentence.   In Claim 5, Hill faults counsel for failing to object to the Court's omission under 21 U.S.C. § 851(b).   Hill, however, does not dispute the validity of either his May 6, 1998 felony conviction for possession of cocaine or his April 10, 2000 felony conviction for possession of cocaine with intent to distribute.[7]   (Notice Gov't's Intent to Enhance Sentence (Docket No. 19) ¶¶ 3, 4.)   Therefore, Hill fails to demonstrate prejudice flowing from counsel's failure to object.   Jackson v. United States, No.7:07cv00191, 2007 WL 2669899, at *5 (W.D. Va. Sept. 6, 2007).   Accordingly, Claim 5 will be dismissed.

---

[7] Both convictions occurred in the Circuit Court for the City of Richmond.

## 2.   Hill's Contentious Relationship With Counsel

### a.   Factual Background

Hill's jury trial concluded on July 2, 2008. Hill alleges that "[t]he animosity between defendant and counsel began shortly after the trial." (Mem. Supp. § 2255 Mot. 13.) Although Hill specifically frames Claim 6 as a violation of his Sixth Amendment right to counsel[8] following his trial, he then cites a letter and bar complaint he filed against Greene prior to Hill's arrest on the present federal charges. Specifically, on November 9, 2007, Hill wrote counsel a letter discharging counsel and demanding a refund of the fee he had paid to counsel. (Id. at 13; Id. Ex. C 2.)[9] Hill also directs the Court to a complaint against counsel that he filed with the Virginia State Bar on November 7, 2007. (Id. Ex. D.) Hill claimed that although he paid Greene $20,000.00 on August 13, 2007, Greene never represented Hill and then refused to return the $20,000.00 when Hill told Greene that he did not want Greene's representation. (Id. Ex. D 3.)

---

[8] "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence. (U.S. Const. VI.)

[9] Although Hill states that he wrote the letter on October 9, 2007 (Mem. Supp. § 2255 Mot. 13), the letter is dated November 9, 2007. Accordingly, the Court will refer to this document as the November 9, 2007 letter. (Id. Ex. C.)

The following pertinent facts also appear in the record. After Hill's jury trial, on September 4, 2008, the Court received a letter from Hill requesting that the Court appoint new counsel for sentencing. (Docket No. 29 ("September 4, 2008 Letter".) Hill attached to his letter a copy of the complaint he had filed with the Virginia State Bar and, among other correspondence, the November 9, 2007 letter to Greene.

On September 5, 2008, the Court wrote Hill a letter acknowledging receipt of Hill's September 4, 2008 Letter. The Court noted that, since Hill had retained Greene, Hill had a contractual relationship with Greene and that "the Court has no authority to interfere with the contractual relationship." (September 5, 2008 Letter.) The Court further stated, "In the meantime, by copy of this letter to Mr. Greene, I am informing him that the Court expects him to properly represent you at your forthcoming sentencing." (Id.)

Under the Sentencing Guidelines, Hill faced a sentence of 240 months on Count One, 360 months to life on Count Two, and 120 months on Count Three. (Presentence Report ¶ 79.) The Government requested a sentence within the Guidelines. (Position of U.S. with Respect to Sentencing 5.) Fourteen days prior to sentencing, Greene had not filed any sentencing pleading as required by the Court's Sentencing Guideline Order.

19

(Sentencing Guideline Order ¶ 6.)    Instead, at 6:34 p.m. on October 6, 2008, the day before Hill's scheduled sentencing, Greene filed a Motion to Withdraw as Counsel.

At Hill's sentencing, Greene represented that, although he had had a good relationship with Hill prior to Hill's jury trial, after the trial Hill's disposition toward him changed. (Sent'g Tr. 6.)    Hill refused to meet with Greene and told Greene he did not want Greene present when the interview to prepare the Presentence Report was conducted.    The Court queried Greene as to why he had not filed a motion for downward departure or variance.    (Id. at 6.)    Greene explained that he had not done so because he had not spoken with Hill.    (Id. at 6-7.) Greene explained that he had presented the Presentence Report to Hill and attempted to explain it to Hill.    (Id. at 7.) Hill, however, did not want to meet with Greene and acted in a threatening and hostile manner. (Id.)

The Government did not oppose Greene's Motion to Withdraw as Counsel.  Nevertheless, the Court denied the Motion to Withdraw as Counsel as being untimely.[10]    (Id.)

The Court then gave Greene an opportunity to speak on Hill's behalf.   Hill did not want Greene to say anything on his

---

[10] The Court chastised Greene for the belated filing of the Motion to Withdraw as Counsel.

behalf.    Therefore, Greene never made any argument for Hill's
benefit at sentencing.    The entirety of Hill's argument as to an
appropriate sentence was "Well, have mercy on me."    (Sent'g Tr.
9.)   The Court did.

The Court imposed a variant sentence of 300 months.[11]    The
Court noted, "The defendant has a low IQ, no real education, and
a fairly modest criminal history, even though he qualified as a
career offender.    That resulted from the fact of three fairly
small  drug  convictions,  and  then  a  whole  lot  of  traffic
violations."   (Id. at 11.)

### b.    Legal Claims

Based on the foregoing facts, Hill claims entitlement to
relief because:   (1) counsel performed deficiently at sentencing
(Mem.  Supp.  §  2255  Mot.  11);  (2)  after  trial,  counsel  labored
under  an  actual  conflict  of  interest  (Id.  at  11-16);  (3)
"sentencing counsel's complete failure to advance Petitioner's
interest both prior to sentencing and during the sentencing
hearing was the effective equivalent of having no counsel at
all.   Cronic, 466 U.S. at 692 ('actual or constructive denial of

---

[11] The sentence consisted of 240 months on Count One, 120
months on Count Three, to be served concurrently and 60 months
on Count Two, to be served consecutively to Counts One and
Three.  (Sent'g Tr. 10.)

counsel')" (Id. at 16); and (4) he was denied his counsel of choice (Id. at 17-20).[12]

Given the legal and factual complexity of Claim 6 and Hill's limited intelligence, the interests of justice warrant the appointment of counsel to assist Hill in litigating Claim 6. 18 U.S.C. § 3006A(a)(2)(B). Accordingly, counsel will be appointed to represent Hill with respect to Claim Six.

Within sixty (60) days of the date of entry hereof, Hill, by counsel, shall file a particularized version of Claim 6. The Court's consideration of Claim 6 will be limited to the law and facts cited in the forthcoming particularized claim. Hill must provide an affidavit, which recites all the relevant facts for the particularized version of Claim 6. Hill and counsel shall dispense with any frivolous theories for relief.

Within eighty (80) days of the date of entry hereof, Greene is directed to provide counsel for the United States with copies of all correspondence relevant to Hill's particularized version of Claim 6. Additionally, Greene shall provide the United States with a sworn statement which responds to the allegations in Hill's particularized version of Claim 6. Within ninety (90) days from the date of entry hereof, counsel for the United

---

[12] Although Hill alleges some facts regarding his difficulties with counsel prior to trial, his legal claim is focused on his Sixth Amendment rights with respect to sentencing.

22

States shall file a motion for summary judgment with respect to Claim 6.

The Clerk is DIRECTED to send a copy of the Memorandum Opinion to Hill and counsel of record.

/s/ _REP_

Robert E. Payne
Senior United States District Judge

Date: March 12, 2012
Richmond, Virginia

23