

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                    Criminal No. 3:07CR407

ANTOINE HILL

### MEMORANDUM OPINION

Antoine Hill, a federal inmate proceeding pro se, submitted this motion and a supporting memorandum under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.[1] Hill raises the following grounds for relief:

| | |
|---|---|
| Claim 1 | "Trial counsel's failure to request Brady[2] material constituted ineffective assistance . . . ." (§ 2255 Mot. 5, ECF No. 165.) |
| Claim 2 | "A genuine conflict of interest existed with trial counsel before trial that adversely affected counsel's performance during the trial . . . ." (Id. at 6.) |
| Claim 3 | "Trial counsel rendered ineffective assistance during the plea bargain, negotiation process." (Id. at 8.) |

For the reasons set forth below, Hill's claims will be dismissed and the § 2255 Motion will be denied. In the summary below, the Court provides details regarding Hill's relations with trial

---

[1] The Court corrects the capitalization in the quotations from Hill's submissions.

[2] Brady v. Maryland, 373 U.S. 83 (1963).

1

counsel Reuben V. Greene in order to provide context for Hill's claim that Greene labored under an actual conflict of interest.

## I. Factual and Procedural History

On August 10, 2007, the police searched Hill's apartment. (July 2, 2008 Tr. 34.) Prior to the search, Hill told Detective Bevington, "he did have a firearm inside the apartment . . . . on the nightstand next to his bed." (July 2, 2008 Tr. 37.) Hill "further stated he had heroin sitting on a plate . . . by the living room couch." (July 2, 2008 Tr. 37.) Upon entering the apartment, Detective Bevington found the heroin and firearm in the locations described by Hill. (July 2, 2008 Tr. 38.) The police also recovered a digital scale, cellophane wrapping, aluminum foil, and plastic baggies consistent with packaging heroin for street-level distribution. (July 2, 2008 Tr. 43.) Additionally, the police seized approximately $7,000. (July 2, 2008 Tr. 44.)

After the search, Hill admitted to Detective Killingsworth that he had owned the gun for a couple of years and he kept it for his protection. (July 2, 2008 Tr. 63.) Hill stated that he purchased the heroin in the apartment from an individual called Truck. (July 2, 2008 Tr. 64.) Hill explained that he dealt heroin to pay his bills and provided a description of his drug

2

trafficking for the past four years. (July 2, 2008 Tr. 63.) Hill further admitted that he had stopped selling drugs "for a brief period of time" when he received a $170,000.00 settlement from an accident. (July 2, 2008 Tr. 67.) Hill, however, acknowledged that as of August 2007, he had resumed dealing heroin. (July 2, 2007 Tr. 67.)

On August 13, 2007, prior to the referral of the above matters to federal authorities for prosecution, Hill paid Reuben V. Greene $20,000.00 to represent him. (ECF No. 29, at 10; see ECF No. 32, at 1.)

On October 16, 2007, a grand jury charged Hill in a three-count sealed indictment with: possession with the intent to distribute heroin (Count One); possession of a firearm in furtherance of a drug trafficking crime (Count Two); and possession of a firearm by a convicted felon (Count Three). (Indictment 1-2, ECF No. 3.) Although an arrest warrant for Hill was issued on October 17, 2007, Hill was not arrested on the warrant until April 28, 2008. (Warrant 1, ECF No. 7.)

In a letter dated November 7, 2007, Hill wrote to the Virginia State Bar Intake Office complaining:

> I informed Reuben V. Greene that I don't want him to represent me. I was not charged with a crime at th[at] time. I paid him $20,000.00 and he said "It don't work like that!" when I ask[ed] for a refund to hire someone else less his fees for his assistance in

3

>     this matter. I called him numerous times regarding this matter since October 17, 2007. He hasn't returned my calls as of November 7, 2007.

(ECF No. 29, at 7.)

On April 28, 2008, Hill was arrested for the charges in the Indictment. (Warrant 1, ECF No. 7.) Thereafter, Greene appeared as Hill's counsel at the detention hearing (ECF No. 9, at 1), and at the arraignment (ECF No. 11, at 1). On May 30, 2008, Greene moved to suppress the statements Hill made to police prior to the search of his residence on the grounds that such statements had been obtained in violation of Hill's rights under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). (ECF No. 12.) On June 23, 2008, Greene filed an addendum to his Motion to Suppress wherein he sought to suppress the evidence obtained from a search of Hill's residence on the ground that the affidavit supporting the search warrant cited an unreliable confidential source. (ECF No. 15, at 1-2.) On June 24, 2008, the Court conducted a hearing on the Motion to Suppress and denied the Motion. (ECF No. 17.)

On July 2, 2008, a jury found Hill guilty of the three counts charged in the Indictment. (ECF No. 27, at 1.) The Court set the matter for sentencing on October 7, 2008. At no point during his trial did Hill inform the Court that he did not want Greene to continue to represent him.

4

On September 4, 2008, the Court received a letter from Hill. (ECF No. 29, at 2.) In that letter, Hill complained that

> I am writing to request this Honorable Court to appoint new counsel due [to] the conflict of interest in the matter of my attorney Reuben V. Greene . . . .
> Reuben V. Greene failed to effectively represent me. After several attempts to inform Mr. Greene that I wanted to hire someone else prior to trial he stated "It don't work like that." I respectively ask the court to appoint new counsel prior to sentencing.
> Judge Your Honor, I received a serious head injury due to being a victim of a robbery [at] the end of April 2008. I was arrested in the hospital. I was still recovering during my hearings and trial. I did not know I could have told you about my situation with Reuben V. Green until the day of my conviction when the Investigator, Mr. Robert Heinzman from the Virginia State Bar contacted my mother and I.
> Mr. Greene took advantage of my situation from the very beginning because of my lack of understanding.

(Id.) Hill attached to his letter copies of documents relating to the bar complaint he had filed against Greene. (Id. at 3-10.) By letter dated September 5, 2008, the late Richard L. Williams, United States District Judge, responded to Hill's letter. (Id. at 1.) Judge Williams informed Hill that "the Court has no authority to interfere with the contractual relationship you have with Mr. Greene. . . . In the meantime, by copy of this letter to Mr. Greene, I am informing him that the Court expects him to properly represent you at your forthcoming sentencing." (Id.)

On October 6, 2008, Greene moved to withdraw as counsel. (ECF No. 32.) On October 7, 2008, the Court denied the Motion to Withdraw and sentenced Hill to 300 months of imprisonment. (J. 2, ECF No. 36.) Prior to and during the sentencing proceeding, Greene failed to take any action on behalf of Hill. On October 8, 2008, Greene filed a notice of appeal and a Second Motion to Withdraw as Counsel. (ECF Nos. 38-41.) On October 9, 2008, the Court granted the Second Motion to Withdraw as Counsel. (ECF No. 42.)

On appeal, Timothy V. Anderson represented Hill (hereinafter "appellate counsel"). (ECF No. 45.) Appellate counsel asserted, inter alia, that "the district court erred when it denied [Hill's] suppression motion by allegedly misapplying the public safety exception to pre-Miranda custodial statements and then incorrectly admitted his post-Miranda statements." United States v. Hill, 340 F. App'x 950, 951 (4th Cir. 2009) (internal footnote omitted). The United States Court of Appeals for the Fourth Circuit affirmed Hill's conviction and sentence. Id. at 953.

Thereafter, Hill filed his first 28 U.S.C. § 2255 motion ("First § 2255 Motion," ECF No. 54). Although the Court dismissed the majority of Hill's claims in the First § 2255 Motion as meritless, the Court ultimately granted Hill relief on

6

his claim that his relationship with Greene had so deteriorated by the time of sentencing that Hill suffered a constructive denial of counsel at sentencing. (ECF No. 106, at 7-10.) The Court set the matter for a resentencing and subsequently resentenced Hill to 152 months of imprisonment. (J. 2, ECF No. 146.) Hill appealed. On November 20, 2014, the United States Court of Appeals for the Fourth Circuit affirmed Hill's sentence and dismissed his appeal in part. United States v. Hill, 592 F. App'x 184, 186 (4th Cir. 2014).

## II. Alleged Ineffective Assistance of Counsel

To demonstrate ineffective assistance of counsel, a defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of Strickland, the defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. Id. at 697.

A. Alleged Failure to Request Brady Material

In Claim One, Hill faults counsel for failing to demand that the Government provide him with Brady material. Hill insists that if counsel had made such a demand, then he would have learned Detective Dunn "was fired from the Richmond police department prior to Petitioner's trial." (Mem. Supp. § 2255 Mot. 3, ECF No. 166.) Hill contends that this information "could have been used to impeach Detective Dunn's testimony." (Id.)

This claim lacks merit.[3] The record indicates that Detective Dunn was dismissed from his job "after being charged with driving drunk for the second time in less than two years." (ECF No. 166-1, at 4.)[4] Detective Dunn, however, never testified at Hill's trial. Detective Dunn only provided limited

---

[3] Reuben Greene swears that he filed a motion for Brady material and received a response to the same from the Government. (ECF No. 193-1, ¶ 6.)

[4] The Court employs the pagination assigned by CM/ECF for the search warrant and related material.

8

information related to an affidavit for the search warrant of Hill's residence. Detective James B. Killingsworth was the affiant on the affidavit used to obtain a search warrant for Hill's residence. Killingsworth supplied the vast majority of information on the affidavit. (ECF No. 166-2, at 2-4.) The information provided by Killingsworth alone was more than sufficient to establish probable cause. (Id.)

The information in the affidavit relevant to Detective Dunn was as follows:

> Additionally, a second confidential source (CS) provided information utilized in the affidavit. The CS has provided Richmond Police Officer Mark Dunn with information in the past that has been proven true, accurate and reliable in the past. Information provided by this CS was verified as true and accurate through independent police investigation, police surveillance, controlled purchases of narcotics, recorded telephone conversation, DMV records and police records. Information provided by this CS in the past has resulted in the arrests and convictions of numerous individuals in the Richmond Courts and the seizure of narcotics, firearms, and drug proceeds.

(ECF No 166-2, at 3.) Given the limited role of Detective Dunn in Hill's criminal case, Dunn's dismissal was immaterial and the Government was not required to disclose his dismissal pursuant to Brady.[5] Moreover, even if the information had been

---

[5] Establish a Brady violation requires a defendant to demonstrate that: "(1) the evidence at issue must be favorable to the defendant, whether directly exculpatory or of impeachment value; (2) it must have been suppressed by the state, whether willfully or inadvertently; and (3) it must be material."

disclosed, it would not have any impact on the legality of the search of Hill's residence or Hill's criminal trial. As Hill fails to demonstrate deficiency or prejudice, Claim One will be dismissed.

B. Alleged Conflict of Interest

In Claim Two, Hill contends that his trial counsel suffered from an actual conflict of interest. In this regard, Hill notes that the animosity between himself and counsel "began before trial." (Mem. Supp. § 2255 Mot. 9.) Hill contends that on November 9, 2007, he sent counsel a letter terminating counsel's service and requesting a return of the $20,000.00 retainer that he had paid to counsel. (Id.) When Hill did not hear back from counsel, on November 14, 2007, Hill filed a bar complaint against counsel. (Id.) Hill insists that counsel ignored his communications and continued to represent him because counsel wished to retain the money Hill had paid counsel. (Id.) As explained below, this claim lacks merit.

The Sixth Amendment guarantee of effective assistance of counsel

> "requires meaningful compliance with the duty of loyalty and the duty to avoid conflicts of interest, and a breach of these basic duties can lead to ineffective representation." United States v. Tatum,

---

Spicer v. Roxbury Corr. Inst., 194 F.3d 547, 555 (4th Cir. 1999).

> 943 F.2d 370, 375 (4th Cir. 1991). When a petitioner premises his ineffective assistance claim on the existence of a conflict of interest, the claim is subjected to the specific standard spelled out in <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980), instead of that articulated in <u>Strickland</u>.

<u>United States v. Nicholson</u> ("<u>Nicholson I</u>"), 475 F.3d 241, 249 (4th Cir. 2007) Specifically,

> [t]he <u>Sullivan</u> standard requires a showing that (1) petitioner's lawyer operated under a "conflict of interest" and (2) such conflict "adversely affected his lawyer's performance." [<u>Sullivan</u>,] 446 U.S. at 348, 100 S. Ct. 1708. If the petitioner makes this showing, prejudice is presumed and nothing more is required for relief.

<u>United States v. Nicholson</u> ("<u>Nicholson II</u>"), 611 F.3d 191, 205 (4th Cir. 2010) (citing <u>Sullivan</u>, 446 U.S. at 349-50).

Nevertheless, "[a]nalysis of claims of actual conflicts of interest frequently do not proceed in two distinct steps; rather '[t]he two requirements . . . are often intertwined.'" <u>Jones v. Polk</u>, 401 F.3d 257, 267 (4th Cir. 2005) (second alteration and omission in original) (quoting <u>Tatum</u>, 943 F.2d at 375)). This is so because an "'actual conflict of interest' means 'a conflict <u>that affected counsel's performance</u>—as opposed to a mere theoretical division of loyalties.'" <u>Id.</u> (quoting <u>Mickens v. Taylor</u>, 535 U.S. 162, 171 (2002)). Thus, the Supreme Court emphasized that "the <u>Sullivan</u> standard is not properly read as requiring inquiry into actual conflict as something separate and

11

apart from adverse effect. An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." Mickens, 535 U.S. at 172 n.5; see Nicholson II, 611 F.3d at 195 n.2.

To establish a conflict of interest, Hill must demonstrate that his and Greene's "interests diverged with respect to a material factual or legal issue or to a course of action." Nicholson II, 611 F.3d at 215 (quoting Gilbert v. Moore, 134 F.3d 642, 652 (4th Cir. 1998)). To establish an adverse effect, Hill must satisfy, by a preponderance of the evidence, the three-part standard announced in Mickens v. Taylor, 240 F.3d 348 (4th Cir. 2001), aff'd 535 U.S. 162 (2002). Nicholson I, 475 F.3d at 251-52 (citing Mickens, 240 F.3d at 361).

> First, the petitioner must identify a plausible alternative defense strategy or tactic that his defense counsel might have pursued. Second, the petitioner must show that the alternative strategy or tactic was objectively reasonable under the facts of the case known to the attorney at the time of the attorney's tactical decision. In the language of Tatum, the petitioner must show that the alternative strategy or tactic was "clearly suggested by the circumstances." Tatum, 943 F.2d at 376. Finally, the petitioner must establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict.

Mickens, 240 F.3d at 361.

While Hill may have had a contentious relationship with Greene, Hill fails to demonstrate that any conflict of interest

12

adversely affected Greene's performance. Id. This claim stumbles at the first step as Hill fails to "identify a plausible alternative defense strategy or tactic that his defense counsel might have pursued." Id. In an effort to satisfy this requirement, Hill alleges:

> The plausible tactic counsel should have pursued was to withdraw as counsel of record once he received a letter from Petitioner requesting termination. In the alternative, counsel, at a minimum, should have actually represented Petitioner's interests with regard to trial. This counsel did not do so. While counsel wanted to retain the money paid to him, counsel realized that to do so he must continue to represent Petitioner. Otherwise the Virginia State Bar complaint and letter of termination before trial created a conflict of interest.

(Mem. Supp. § 2255 Mot. 12.) Withdrawing is not a "defense strategy or tactic." Mickens, 240 F.3d at 361; see, e.g., Stephen v. Branker, 570 F.3d 198, 210 (4th Cir. 2010) (listing examples of allegedly foregone defense strategies and tactics such as vigorously cross-examining witnesses and objecting to certain testimony); Lugo v. United States, 349 F. App'x 484, 487 (11th Cir. 2009) (citation omitted) (requiring the petitioner to show "that his attorney actually made decisions that benefitted the attorney but harmed the client"). "[T]he existence of a fee dispute and an attorney's motion to withdraw for that reason do not without more constitute a conflict of interest." United States v. Guzman, Nos. 06-40079-03-SAC, 09-4083-SAC, 2010 WL

13

4025136, at *8 (D. Kan. Oct. 13, 2010)(citation omitted); see United States v. Burns, 990 F.2d 1426, 1438 (4th Cir. 1993) (defendant's filing of a state bar grievance against his appointed counsel did not create an actual conflict of interest). Moreover, the record reveals that counsel zealously, but unsuccessfully, represented Hill at trial. See Burns, 990 F.2d at 1438 ("We do not think that [an] appointed attorney could have gleaned any advantage for himself in disciplinary proceedings before the state bar by failing to employ his best exertions on [his client's] behalf at trial.") Because Hill fails to demonstrate that any conflict of interest adversely affected Greene's performance, Claim Two will be dismissed.

**C. Alleged Failure to Convey a Plea Offer**

In Claim Three, Hill alleges that, when he was reviewing the joint appendix from his appeal, he "discovered a plea agreement that was never disclosed to Petitioner." (Mem. Supp. § 2255 Mot. 15.) This plea offer allowed Hill to plead guilty to Counts One and Two of the indictment in exchange for the dismissal of Count Three. (ECF No. 166-6, at 1, 5.) Hill contends that, if counsel had informed him of this plea offer, "Petitioner would have taken the plea bargain." (Mem. Supp. § 2255 Mot. 16-17.)

Greene disputes Hill's account. Greene swears,

> Hill was presented with the plea agreement offered by the Government, calling for him to plead guilty to counts 1 and 2 of the indictment. I recall this was discussed during a meeting with defendant at the jail. Defendant angrily rejected it and did not want to discuss the details, although I did attempt to explain them to him. He resolutely wanted to go to trial to fight his case.

(ECF No. 193-1, ¶ 30.)

"During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" Lafler v. Cooper, 556 U.S. 156, 162 (2012) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). Under the deficiency prong, it is accepted that "the [complete] failure of a defense attorney to timely inform his client of a plea offer constitutes unreasonable professional assistance." United States v. Brannon, 48 F. App'x 51, 53 (4th Cir. 2002) (citing United States v. Blaylock, 20 F.3d 1458, 1465-66 (9th Cir. 1994)); see Griffin v. United States, 330 F.3d 733, 737 (6th Cir. 2003). No need exists to resolve the factual dispute as to whether Greene conveyed the plea offer to Hill because on the present record Hill cannot demonstrate prejudice.

"[T]he prejudice inquiry focuses on 'whether counsel's constitutionally ineffective performance affected the outcome of the plea process.'" United States v. Merritt, 102 F. App'x 303, 307 (4th Cir. 2004) (quoting Hill v. Lockhart, 474 U.S. 52, 59

15

(1985)). Hill must demonstrate "a reasonable probability" that he would have accepted the plea offer if he "had . . . been afforded effective assistance of counsel. Missouri v. Frye, 566 U.S. 134, 147 (2012); see Merritt, 102 F. App'x at 307. Such a showing requires a convicted defendant to "present some credible, non-conclusory evidence that he would have [accepted the proffered plea] had he been properly advised." Sanders v. United States, 341 F.3d 720, 722 (8th Cir. 2003) (quoting Engelen v. United States, 68 F.3d 238, 241 (8th Cir. 1995)). Hill has not done so.

"A defendant who maintains his innocence at all the stages of his criminal prosecution and shows no indication that he would be willing to admit his guilt undermines his later § 2255 claim that he would have pleaded guilty if only he had received better advice from his lawyer." Id. at 723 (citing United States v. Stevens, 149 F.3d 747, 748 (8th Cir. 1998); Engelen, 68 F.3d at 241); see Chesney v. United States, 367 F.3d 1055, 1060 (8th Cir. 2004). In this regard, Hill did not merely stand on his right to require the Government to prove its case at trial. Rather, Hill took the stand and disputed the evidence which reflected that he possessed heroin with intent to distribute it and that he possessed a firearm in furtherance of the above drug trafficking crime. (July 2, 2008 Tr. 105.) Hill

asserted that the heroin and firearm found in his apartment belonged to his cousin. (July 2, 2008 Tr. 105.) Indeed, even in his post-conviction proceedings, Hill continued to assert that he was innocent of the conduct which formed the basis for his convictions. Given these circumstances, the Court finds "palpably incredible" Hill's conclusory assertion that he would have accepted the Government's plea offer. United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005)(internal quotation marks omitted) (citation omitted); see Sanders, 341 F.3d at 722-23; Jackson v. United States, 638 F. Supp. 2d 514, 581-82 (W.D.N.C. 2009) (concluding that in light of the petitioner's expressed desire to fight the charges, he failed to demonstrate a reasonable probability that he would have accepted the plea offer during the window of opportunity to accept the plea); Goudie v. United States, 323 F. Supp. 2d 1320, 1335-36 (S.D. Fla. 2004) (rejecting petitioner's claim that he would have accepted the offer when, at the time the plea was open, the petitioner insisted he was innocent). Accordingly, Claim Three will be dismissed.

Hill's 28 U.S.C. § 2255 Motion (ECF No. 165) will be denied. The action will be dismissed. The Court will deny a certificate of appealability.

## III. Outstanding Matters

On April 12, 2017, Hill filed a Motion to Amend. (ECF No. 188.) In that motion, Hill requests that the Court consider reducing his sentence in light of the recent decision in Dean v. United States, 137 S. Ct. 1170 (2017). In Dean, the Supreme Court interpreted the language of 28 U.S.C. § 924(c) and held:

> That language simply requires any mandatory minimum under § 924(c) to be imposed "in addition to" the sentence for the predicate offense, and to run consecutively to that sentence. Nothing in those requirements prevents a sentencing court from considering a mandatory minimum under § 924(c) when calculating an appropriate sentence for the predicate offense.

Id. at 1178.

Hill's advisory guidelines range for his non-924(c) convictions was 92 to 115 months. (Mar. 27, 2014 Tr. 21-22, ECF No. 156.) The Court sentenced Hill 92 months of imprisonment for Counts One and Three, an extremely lenient sentence considering his criminal background and the current offense. (Mar. 27, 2014 Tr. 30.) Even if the Court could alter Hill's sentence, nothing in the Dean decision gives this Court pause as to impose a lesser sentence at this juncture. See United States v. Adams, No. 7:06-CR-00022-1, 2017 WL 2829704, at *2 (W.D. Va. June 29, 2017) (dismissing § 2255 motion as untimely filed because Dean does not apply retroactively to § 2255 proceedings

under the criteria discussed in Teague v. Lane, 489 U.S. 288, 311-16 (1989)).

Indeed, were the Court to revisit Hill's sentence, a higher sentence may be in order. Further review of the Presentence Investigation Report suggests that Hill should have received a two-level sentence enhancement for obstruction of justice for his denial, under oath, that he possessed the firearm and heroin found in his residence. (July 2, 2008 Tr. 105.) Accordingly, Hill's Motion to Amend (ECF No. 188) will be denied as futile.

Hill also has moved for summary judgment in his favor with respect to his § 2255 Motion. Because the Court has denied the § 2255 Motion, the Motions for Summary Judgment (ECF Nos. 185, 190) will be denied as moot. Additionally, Hill's Motion to Compel a Report and Recommendation and request to proceed in forma pauperis (ECF Nos. 167, 182) will be denied as unnecessary.

The Clerk is directed to send a copy of the Memorandum Opinion to Hill and counsel of record.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: October 10, 2017

19